**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANIEL ROBERT HAMILTON, # B-26391,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-1034-SMY |
| ) | |
| **KENT E. BROOKMAN,** ) | |
| **TODD W. COWELL,** ) | |
| **KIMBERLY BUTLER,** ) | |
| **RICHARD PHARREL,** ) | |
| **MICHAEL D. HORN,** ) | |
| **MR. BRADLEY,** ) | |
| **MR. BEBOUT,** ) | |
| **MR. PHOENIX,** ) | |
| **MR. ADAMS,** ) | |
| **JOHNATHAN HOFFMAN,** ) | |
| **JOHN BALDWIN,** ) | |
| **BRUCE RAUNER,** ) | |
| **BOARD MEMBERS of ILLINOIS DEPT.** ) | |
| **of CORRECTIONS,** ) | |
| **LORI OAKLEY,** ) | |
| **MR. HUGHS,** ) | |
| **ALEX JONES,** ) | |
| **MR. MICHAEL J. ROBERTS,** ) | |
| **MR. J. POWELL,** ) | |
| **and MR. MICH 12919,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

This matter is before the Court for review of Plaintiff's Third Amended Complaint (Doc. 15), filed on May 4, 2017. Plaintiff was incarcerated at Menard Correctional Center ("Menard") when he originally filed this action. The Court dismissed Plaintiff's original Complaint (Doc. 1) because that 92-page document contained multiple and overlapping statements of claim which made it impossible to discern which of the many piecemeal statements of claim should be

1

evaluated as the operative Complaint. The Court ordered Plaintiff to submit an amended complaint in accordance with the following instructions:

> **The first amended complaint must set forth all of Plaintiff's claims against the defendants in a *single* pleading.** For each separate claim in the amended complaint, Plaintiff shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions that each defendant took in violation of Plaintiff's rights. Plaintiff should attempt to include the facts of his case in chronological order, inserting defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

(Doc. 8, p. 2).

Plaintiff submitted his First Amended Complaint (Doc. 9) within the Court's December 7, 2016 deadline. It consisted of 134 pages and an additional 136 pages of exhibits. The First Amended Complaint contained the same flaws that marred the original Complaint; namely 11 separate statements of claim and multiple requests for relief scattered throughout the 100-page body of the pleading. However, before the Court could complete the merits review of the First Amended Complaint, Plaintiff submitted a Second Amended Complaint, filed on March 14, 2017. (Doc. 12). He then filed 2 piecemeal "supplements" to the Second Amended Complaint. (Docs. 13 & 14). Once again, while the Second Amended Complaint was undergoing preliminary review by the Court, Plaintiff submitted another revised *pro se* pleading, which was filed as his Third Amended Complaint. (Doc. 15).

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading *once* as a matter of course, but thereafter may only amend its pleading with leave of court or with consent of the adverse parties. FED. R. CIV. P. 15(a)(1),(2). Here, Plaintiff did not file a motion seeking leave to amend for his Second or Third Amended Complaints. Nevertheless, because leave to amend should be freely given when justice so requires, Plaintiff's amended pleadings have been filed of record.

As Plaintiff was advised in the Order at Doc. 8, an amended complaint supersedes all earlier-filed versions of the complaint, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Accordingly, the Third Amended Complaint (Doc. 15) stands as the operative complaint in this action and is now ripe for review pursuant to 28 U.S.C. 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims, and must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. *See* 28 U.S.C. § 1915A.

### **The Third Amended Complaint (Doc. 15)**

The Third Amended Complaint contains 100 pages, 88 of which make up the statement of claim. (Doc. 15, pp. 12-57; Doc. 15-1, pp. 1-42). Plaintiff also filed 82 pages of exhibits. (Docs. 15-2, 15-3). The Third Amended Complaint names 18 individual defendants as well as the "Board Members of Illinois Department of Corrections."

Count 1 alleges the following. Plaintiff was subjected to a "2nd bad wrongful imprisonment" based on a "bad disciplinary hearing" on November 10, 2015, for which Plaintiff was required to serve 60 days in solitary confinement. (Doc. 15, p. 12). The "same bad federal Defendant" (whom Plaintiff does not identify by name) was responsible for punishing him further after other "bad disciplinary hearing[s]," one of which happened on July 12, 2016. *Id.* Plaintiff had been scheduled for release on August 12, 2016, but the disciplinary action apparently resulted in extending his incarceration, because 2 months of Plaintiff's good conduct credits were revoked as part of his punishment.

Count 2 includes similar allegations against a "2nd bad federal Defendant" who, on July

3

6, 2016, found Plaintiff guilty of another disciplinary infraction which revoked another 30 days of good time.[1] (Doc. 15, p. 13). Plaintiff states that the unnamed defendant disregarded the prison's written procedures regarding the disciplinary action, and did not follow the requirements of *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). *Id.* Plaintiff states that he is "severely mentally disabled" and a "Pro Black Israelite." (Doc. 15, pp. 13-14, 16). He refers to 5 "bad false reports" that were not supported by "relevant material evidence" or "relevant documentary evidence." (Doc. 15, p. 15). Plaintiff then complains that he was transferred from Menard's medium security unit to solitary confinement in the maximum security segregation unit of "North 2." (Doc. 15, p. 16). This move made it impossible for him to prepare a defense to the 5 disciplinary reports. Furthermore, his prescribed medication for his mental health condition was denied.

Plaintiff then goes on to describe at length how this situation caused him to have "flashbacks" to "chattel slavery of the 1600's" and lynchings, whippings, torture, and other degradations inflicted on his African ancestors, as depicted in a list he provides of major motion pictures and television productions. (Doc. 15, pp. 16-18). This recitation is repeated in several other sections of the Third Amended Complaint. (Doc. 15, pp. 25-26; 30-32; 37-38; Doc. 15-1, pp. 26-28). On page 19, Plaintiff includes for the first time in the statement of claim, the names of 2 Defendants (Brookman and Pharrel[2]), whose breach of "duty to obey their Administrative Agency Disciplinary procedures" caused dehumanization and damages to Plaintiff. (Doc. 15, p. 19).

---

[1] This July 6, 2016, disciplinary proceeding is also referenced as part of the basis for Plaintiff's claims brought in another lawsuit in this Court, *Hamilton v. Basten*, Case No. 16-cv-1050-NJR (*See* Doc. 10 in that case). Case No. 16-cv-1050 was dismissed with prejudice on June 2, 2017, after Plaintiff failed to file an amended complaint in compliance with a Court order. (Doc. 14 in Case No. 16-cv-1050).
[2] Plaintiff variously spells this Defendant's name as "Pharrel" in the list of parties (Doc. 15, p. 2), "Pharell" in the caption and body of the Third Amended Complaint. (Doc. 15, pp. 1, 19).

In Count 3 (Doc. 15, pp. 20-26), Plaintiff states that on November 12, 2015, he was housed with a cellmate who was aggressive and classified at a higher security level. The cellmate attacked Plaintiff, and he required 4 "sutras" (the Court presumes he means sutures) to stitch a major laceration on his face. (Doc. 15, p. 21). After this trauma, Plaintiff required mental health treatment including an increase of his medication to the "maximum dosage." (Doc. 15, p. 22). Plaintiff blames "2 white federal Defendants" for placing him at risk of harm in the double cell where he was attacked. (Doc. 15, pp. 21-22, 24). He does not identify those individuals by name.

In Count 4, Plaintiff references disciplinary actions on November 4, 2015 and July 6, 2016, in which "2 other white federal Defendants" disobeyed proper procedures. (Doc. 15, p. 27). As in Count 2, he again mentions his transfer to solitary confinement after the July 6 proceeding. He notes that he had "probably 9 or 10 bad false reports" resulting in discipline. He was not able to gather evidence or prepare a defense to these charges. Officer Jones' "omission of duty" partly caused the battery that Plaintiff suffered. (Doc. 15, pp. 28-29). Officer Hughs contributed to the revocation of 90 days of Plaintiff's good conduct credits. (Doc. 15, p. 29). Plaintiff further takes issue with his placement in temporary confinement after "bad false report[s]" on June 28, 2016, and November 18, 2016. *Id.*

Count 5 again references the disciplinary report of November 4, 2015, as well as incidents on November 15, 2015, and June 28, 2016. (Doc. 15, pp. 35-36). He appears to be objecting to the failure to investigate and/or review these reports. He again mentions the battery, for which he required emergency treatment for a broken nose and profuse bleeding from the laceration on his left eyebrow. (Doc. 15, p. 39). He blames "3 white Defendants" for either the battery or the wrongful disciplinary action(s), or both. (Doc. 15, pp. 39-40).

Count 6 once more begins with the disciplinary actions of November 4, 2015, November 15, 2015, June 28, 2016 and July 6, 2016, which were written by groups of "white federal Defendants." (Doc. 15, p. 41). Plaintiff asserts that the officers never observed him committing an offense or had evidence of his guilt, and knew that he did not commit the alleged offenses. (Doc. 15, p. 42). In this section, he refers, apparently to some Defendants, as the "2nd Judge" and "3rd Judge," again without including a proper name. (Doc. 15, pp. 43-44). He was deprived of his right to freedom of religious worship during 7 months of solitary confinement. (Doc. 15, p. 45). Without explaining what was done to him, he claims to have been tortured by "the white federal Defendants." (Doc. 15, pp. 48-54). He includes several pages describing problems and trauma experienced by several of his family members. (Doc. 15, pp. 54-57).

Plaintiff then inserts a lengthy outline of "facts about my conditions of confinement" for the periods of November 4, 2015- February 4, 2016; July 6- November 10, 2016; and January 5- January 19, 2017. These range from deprivation of bedding, soap, clothing, a fan, cleaning supplies, a religious diet, worship services, and private showers, to being sold defective ballpoint pens, and being forced to listen to other "slaves" play chess with an altered chess board. (Doc. 15-1, pp. 1-18). He was denied mental health treatment for a 3-month period. (Doc. 15-1, p. 5). No defendant is named in connection with these problems.

In Count 7, Plaintiff claims that Brookman deprived him of his property privileges in connection with a disciplinary action. (Doc. 15-1, p. 20). He appears to be alleging that Brookman found him guilty of an infraction in January 2017 without supporting evidence and subjected him to 15 days in solitary confinement. Plaintiff was deprived of his property and lost recreation and shower privileges during much of that time. (Doc. 15-1, pp. 20-21). Mr. Mich concurred with the "bad determination" on a disciplinary charge. (Doc. 15-1, p. 23). On January

6

5, 2016, Richard Pharrell was present when Plaintiff was strip searched and given an emergency disciplinary transfer. (Doc. 15-1, p. 24).

Plaintiff requests compensatory, punitive and nominal damages. (Doc. 15-1, pp. 31, 36, 40, 43).

## **Discussion**

Compared to his earlier efforts, Plaintiff has made some progress toward drafting a coherent pleading. He presents one statement of claim which is organized into seven counts. However, three major flaws prevent the lawsuit from going forward based on the Third Amended Complaint. First, the sheer length of the statement of claim runs afoul of Federal Rule of Civil Procedure 8. Secondly, Plaintiff's repeated use of general references such as "the bad federal Defendant" and "the white Defendants," instead of the officials' actual names prevents the Court and the defendants from identifying which individuals were responsible for the alleged violations of Plaintiff's rights. Third, the statement of claim is rife with conclusory statements (for example, that Plaintiff was punished based on false disciplinary reports, and Defendants breached their duty to obey administrative rules and procedures in the disciplinary hearings), which are not supported with any factual description of the incidents giving rise to the claims. Because of these problems, it is next to impossible for the Court or any defendant to identify which allegations are connected to a particular party's supposed wrongdoing or to determine what actions were taken by each individual defendant. In the absence of information stating what a particular defendant did or failed to do, the Court cannot determine whether the defendant committed a constitutional violation.

As for the requirements of Rule 8, the Third Amended Complaint flagrantly violates the provision that a pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). It also runs afoul of Rule 8(d)(1), which states: "Each allegation must be simple, concise, and direct." Commenting on Rule 8, the Seventh Circuit has noted:

> The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint "'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied*, 510 U.S. 868, 114 S. Ct. 193, 126 L. Ed. 2d 151 (1993); *see also Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what it is the plaintiff asserts). A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.

*Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994). *See also Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Dausch v. Rykse*, 52 F.3d 1425, 1430 (7th Cir. 1994).

The Court finds that Plaintiff's Third Amended Complaint does not provide a short and plain statement of the claim and requires the Court and Defendants "to forever sift through its pages" to determine what claims Plaintiff intends to bring. Furthermore, Plaintiff's failure to include the names of the defendants in his narrative makes it impossible to identify which allegations are made against which defendant. *See Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). The general allegations against unidentified defendants prevent the Court from conducting orderly litigation, and make it extremely difficult for the defendants to prepare a responsive pleading. *See Vicom*, 20 F.3d at 775-76. These violations of Rule 8 render the Third Amended Complaint subject to dismissal.

Moreover, and for some of these same reasons, the Third Amended Complaint fails to state a claim upon which relief may be granted, and is subject to dismissal under § 1915A. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus,

"to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). In order to state a claim against a defendant, a plaintiff must describe what each named defendant did (or failed to do), that violated the plaintiff's constitutional rights.

In Plaintiff's statement of claim, most of the defendants are not mentioned at all. Where a name does appear, Plaintiff does not describe what actions the defendant took or include any facts to support his claim. Instead, he relies on conclusory statements such as (with reference to Brookman and Pharrel): "the breach of each of their duty to obey their Administrative Agency Disciplinary procedures, has proximately caused the 1. dehumanizing and 2. the irreparable . . . damages" to Plaintiff. (Doc. 15, p. 19). This is insufficient to support a civil rights claim. The Seventh Circuit instructs that courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Here, the Third Amended Complaint includes some factual content, for example, the conditions Plaintiff faced while in segregation (Doc. 15-1, pp. 1-18); the denial of his medication and mental health treatment (Doc. 15, p. 16; Doc. 15-1, p. 5); and the attack on him by his cellmate (Doc. 15, p. 21-22), as well as some facts regarding Plaintiff's numerous disciplinary infractions.

However, Plaintiff does not connect these matters to any named defendant or explain what an individual defendant did or failed to do, to support a claim for liability. For example, did Plaintiff ask a prison official to bring him his prescription medication or provide him with clean bedding, winter clothing, or cleaning supplies? If so, what was the official's response or lack thereof? The Third Amended Complaint never addresses such matters. It thus fails to state a viable claim that any defendant violated Plaintiff's constitutional rights.

For these reasons, the Third Amended Complaint shall be dismissed for failure to state a claim upon which relief may be granted. The dismissal, however, shall be without prejudice at this time. Plaintiff shall be allowed one final opportunity to submit a properly drafted amended complaint. If the new amended complaint fails to state a claim or fails to comply with the directions in this Order, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review under § 1915A.

## **Pending Motions**

Plaintiff has filed a motion for recruitment of counsel (Doc. 2). The dismissal of the Third Amended Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

As to Plaintiff's efforts to secure counsel, his motion states only that he has asked extended family members, but they have declined to help him. Additionally, he wrote to one friend in January 2016, who has not responded. (Doc. 2, p. 1). The motion does not disclose any direct contacts with potential attorneys. Based on these statements, the Court cannot conclude that Plaintiff has made reasonable efforts to obtain counsel.

With reference to the second inquiry, Plaintiff reveals that he has completed "some college." (Doc. 2, p. 2). He states that he is a mental health patient with a severe mental illness, for which he takes 200 mg of Zoloft. Plaintiff's previous attempts at drafting a complaint reveal that he is articulate and capable of stating the relevant facts and his legal claims, as well as expressing his opinions and arguments on varied matters at great length. He primarily needs to condense his narrative into a more concise statement of claim, and focus on the *facts* that support his claims of wrongdoing. Plaintiff alone has knowledge of these facts, and no legal training or

knowledge is required to set them down on paper.  Therefore, the recruitment of counsel is not warranted at this time and the motion (Doc. 2) is **DENIED** without prejudice.  The Court will remain open to appointing counsel as the case progresses.

Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to (1) contact at least **three** attorneys regarding representation *in this case* prior to filing another motion; (2) include in the motion the name and addresses of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.  Plaintiff also should include in his motion a statement as to why he believes recruitment of counsel is necessary in his case.

Plaintiff filed a Motion for Extension of Time (Doc. 11) on January 11, 2017.  This motion seeks an extension of time to file a Second Amended Complaint in a different action pending before this Court.  Plaintiff filed the identical motion in this case and in his other case (*Hamilton v. Basten*, Case No. 16-cv-1050-NJR), where the motion was granted in part.  None of the relief requested in this motion pertains to matters in the instant case.  Therefore, this motion (Doc. 11) is **DENIED AS MOOT.**

<u>**Disposition**</u>

**IT IS HEREBY ORDERED** that Plaintiff's Third Amended Complaint (Doc. 15) is **DISMISSED** pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted, as well as for violating Rule 8(a) and (d) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his Fourth Amended Complaint within 28 days of the entry of this order (on or before October 30, 2017).  It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "Fourth Amended Complaint"

and include Case Number 16-cv-1034-SMY.

The amended complaint shall contain *only one section* presenting Plaintiff's statement of claim. Within the statement of claim, Plaintiff should designate each violation in a separate count (for example, Count 1 for failure to protect Plaintiff from an inmate assault, or Count 2 for a false disciplinary charge on a specified date[3]). In each count, Plaintiff shall specify, *by name*,[4] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. It is *not* sufficient to refer to a group of Defendants collectively (such as "the 2 white federal Defendants"). Plaintiff should include the *facts* of his case (in other words, what action was taken against Plaintiff, who did it, and when did the incident happen) in chronological order. It is *not* sufficient to merely state, for example, that a Defendant failed to follow requirements for conducting a disciplinary hearing – the complaint must describe what a Defendant did or failed to do, that violated a constitutional protection. Plaintiff should insert Defendants' names in order to identify the actors and the dates of any material acts or omissions. In order to curtail the length of his pleading, Plaintiff should refrain from repetition and general social commentary – and stick to the *facts* that demonstrate a constitutional violation.

An amended complaint supersedes and replaces a previously-filed complaint, rendering the earlier complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the Fourth Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. If the Fourth Amended Complaint does not conform to these requirements, it shall be stricken.

---

[3] Because Plaintiff has made repeated and duplicative references to several disciplinary actions in his earlier pleading attempts, it is strongly suggested that he consolidate these claims and present them in chronological order according to the date of each disciplinary action.

[4] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

Plaintiff must also re-file any *relevant* exhibits he wishes the Court to consider along with the Fourth Amended Complaint.

If Plaintiff fails to file an amended complaint, or if he submits an amended complaint that does not comply with the instructions set forth in this Order, this case shall be subject to dismissal with prejudice for failure to comply with an order of the Court. *See* Fed. R. Civ. P. 41(b). In addition, because the Third Amended Complaint failed to state a claim upon which relief may be granted, Plaintiff will incur a "strike" within the meaning of § 1915(g) if he does not submit a Fourth Amended Complaint.[5] No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the Fourth Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 2, 2017**

                                              s/ STACI M. YANDLE
                                              United States District Judge

---

[5] Because Plaintiff has already incurred two "strikes," if he is assessed another strike in this case, it will be his third. A prisoner who accumulates three strikes for having cases dismissed as frivolous, malicious, or for failure to state a claim loses the ability to bring a future action or appeal *in forma pauperis* unless he is facing imminent danger of serious physical injury. 28 U.S.C. § 1915(g).