# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANIEL ROBERT HAMILTON, # B-26391, )
                                        )
              **Plaintiff,** )
                                          )
      **vs.** )        **Case No. 16-cv-1034-SMY**
                                          )
KENT E. BROOKMAN, )
TODD W. COWELL, )
KIMBERLY BUTLER, )
RICHARD PHARREL, )
MICHAEL HORN, )
MR. BRADLEY, )
BEBOUT, )
MR. PHOENIX, )
ADAMS, )
JOHNATHAN HOFFMAN, )
JOHN BALDWIN, )
BRUCE RAUNER, )
BOARD MEMBERS of ILLINOIS DEPT. )
     of CORRECTIONS, )
LORI OAKLEY, )
MR. HUGHS, )
ALEX JONES, )
MICHAEL J. ROBERTS, )
MR. J. POWELL, )
MR. MICH, )
and MR. R. BASTEN, )
                                          )
             **Defendants.** )

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

      This matter is before the Court for a merits review of Plaintiff Daniel Hamilton's Fourth Amended Complaint (Doc. 20), pursuant to 28 U.S.C. § 1915A. Plaintiff was an inmate at Menard Correctional Center ("Menard") when he filed this action. He has since been released from incarceration. (Doc. 18).

The Court dismissed Plaintiff's original 92-page Complaint (Doc. 1) because it contained multiple, overlapping statements of claim, which made it impossible to discern which of the many piecemeal statements should be evaluated as the operative Complaint. Plaintiff was ordered to submit an amended complaint. (Doc. 8).

In response to that Order, Plaintiff filed a 134-page First Amended Complaint (Doc. 9) which was accompanied by 136 pages of exhibits. Before the Court could complete its § 1915A review of that pleading, Plaintiff submitted a Second Amended Complaint. (Doc. 12). It was followed by 2 piecemeal "supplements." (Docs. 13 & 14). While the Second Amended Complaint was undergoing preliminary review, Plaintiff submitted yet another pleading, which was filed as the Third Amended Complaint on. (Doc. 15). It contained an 88-page statement of claim, 82 pages of exhibits, and named 18 individual Defendants. In the Third Amended Complaint, Plaintiff raised claims including improper disciplinary hearings and punishment in solitary confinement during 2015 and 2016; placement in a cell with a dangerous cellmate who attacked him; deprivation of bedding, clothing, cleaning and hygiene supplies; and denial of a religious diet and access to worship services.

On October 2, 2017, this Court dismissed the Third Amended Complaint for failure to state a claim upon which relief may be granted. (Doc. 16). The undersigned noted that the pleading's length and lack of coherency violated Federal Rule of Civil Procedure 8, and that Plaintiff's to identify Defendants by name in the statement of claim made it impossible to determine which claims were made against which individuals. (Doc. 16, pp. 7-10).

Plaintiff was given one *final* opportunity to submit a properly drafted amended complaint. He was warned that if his amended pleading failed to state a claim or failed to comply with the Court's directions, this case would be dismissed with prejudice and he would be

assessed a "strike" pursuant to § 1915(g).  (Doc. 16, pp. 10, 13-14).

## The Fourth Amended Complaint (Doc. 20)

The Fourth Amended Complaint, at 75 pages, is no more concise than Plaintiff's earlier attempts.  That said, it is more coherent and Plaintiff includes references to most of the 20 Defendants in his 57-page statement of claim.  He asserts forth 13 numbered claims for relief (although his 9th claim was omitted, apparently by mistake).  (Doc. 20, pp. 31-42; 59-70).

Plaintiff begins his narrative by identifying himself as a "Pro Black Hebrew Israelite Severely Mentally Ill inmate."  (Doc. 20, p. 14).  On April 24, 2015, he was moved to the "Menard CC Slave Plantation of the IDOC," where his religious affiliation was noted on the back of his inmate ID card.  He wrote a grievance about his housing placement, noting that he had only a 20-month sentence.  Phoenix (counselor) responded that Plaintiff had previously paroled from Pontiac Correctional Center ("Pontiac") maximum security in April 2010, but after 6 months, he would be eligible for his requested placement in minimum security as well as the drug and alcohol treatment program.  (Doc. 20, p. 15).  Phoenix stated that he submitted Plaintiff for a transfer to the minimum security unit.  Plaintiff was moved to the lower-security area in September 2015.  (Doc. 20, p. 16).

Before the September 2015 transfer, Plaintiff had been receiving mental health treatment for severe depression and bi-polar disorder.  His Zoloft prescription had been increased to the maximum dosage of 200 mg, and his doctor changed his Lithium prescription.  (Doc. 20, p. 16).

At some undisclosed date, Plaintiff had written a formal complaint to the FBI about conspiracy to violate his civil rights during his imprisonment at Menard and Pontiac between March 2003 and April 2012.  (Doc. 20, p. 17).  He alleged he had been placed in solitary confinement and was assaulted in prison.   However, the Fourth Amended Complaint provides

3

no details as to where or when these events occurred.  On September 15, 2015, Plaintiff was notified by the FBI that this complaint had been forwarded to its Office of the Executive Secretary for review.  (Doc. 20, pp. 17-18; Doc. 20-1, p. 1).  Plaintiff believes that this FBI complaint triggered various acts of retaliation against him, including his placement in segregation with a violent gang-member inmate.

On November 4, 2015, Plaintiff was issued an allegedly false disciplinary report by Cowell and Horn after he had attended his Alcoholics Anonymous class.[1]  (Doc. 20, pp. 18-19; Doc. 20-1, pp. 5-7).  Cowell, Horn, shift supervisor Jones, and reviewing officer Pharrell allegedly disobeyed administrative policies/procedures in handling the disciplinary report, in that Plaintiff was not given 24 hours' notice before his disciplinary hearing and was not offered assistance to prepare his defense while he was in solitary confinement.  (Doc. 20, p. 19).

Plaintiff was found guilty and punished with 1 month in segregation for Horn's report and another month for Cowell's disciplinary charge.  (Doc. 20, p. 29; Doc. 20-1, pp. 11-12).  He was moved from the lower security area to the maximum-security segregation wing.  (Doc. 20, p. 18).  He alleges that Butler (Warden), Bebout, Baldwin (IDOC Director), and the Board Members of the Illinois Department of Corrections failed to implement or follow administrative code provisions requiring a review of medical and mental health concerns, differences in age, size, security level, and other issues with reference to potential cellmates, before he was double-celled in segregation with inmate Adams.  (Doc. 20, pp. 19-23).  On November 9, 2015, when Plaintiff was assigned to the segregation cell, Bebout and Butler allegedly did not comply with the referenced administrative rules/directives when they assigned him to a double cell with

---

[1] Plaintiff attaches these reports, which charged him with intimidation and insolence for refusing to stop sharpening pencils during his AA class when requested (Horn), and then verbally threatening the officer (Cowell) who escorted him from school to his cell.  (Doc. 20-1, pp. 5-7, 11-12). Brookman chaired the disciplinary committee that heard both tickets on November 10, 2015.

inmate Adams.  (Doc. 20, pp. 23-24).

Plaintiff alleges that Defendants knew that he is a Pro Black Hebrew Israelite and that he had been diagnosed with a severe mental illness.  Adams was incarcerated for murder and was a Gangster Disciple member.  On November 15, 2016, Adams attacked and beat Plaintiff.  Plaintiff maintains that he did not fight back.  (Doc. 20, p. 24).  Plaintiff yelled for help and Hoffman arrived, but walked away while Plaintiff was bleeding.  (Doc. 20, p. 25).  Plaintiff told Hoffman he was attacked, but Bebout said that "It looks like a fight to me."  *Id.*  Hoffman, on orders from Bebout, wrote Plaintiff a disciplinary report for fighting.  (Doc. 20-1, p. 8).  Plaintiff was treated for his injuries and given 4 sutures.  He filed a grievance to Oakley, but she affirmed the "wrongful imprisonments."  *Id.*  Plaintiff received an additional 30-day punishment in segregation for Hoffman's fighting charge.  (Doc. 20, pp. 25-26, 29; Doc. 20-1, p. 13).  After completing the segregation term, he was sent back to general population, where he remained for 3 months.  (Doc. 20, pp. 25-26).

On June 28, 2016, Basten[2] wrote a "4th" false disciplinary report with no evidence, and Powell and Mich disobeyed administrative procedures related to the report and Plaintiff's temporary confinement.  (Doc. 20, pp. 26-28; Doc. 20-1, pp. 9-10).  Plaintiff had been scheduled for release on August 12, 2016, but Basten's report led to the revocation of 1 month of Plaintiff's good conduct credits as well as 3 more months in segregation.  (Doc. 20, pp. 27, 29; Doc. 20-1, pp. 14-15).  On the day the disciplinary hearing was held, Pharrell[3] issued Plaintiff the "5th"

---

[2] The attached disciplinary report reflects that the issuing officer was "R. Bastien."  He charged Plaintiff with intimidation, insolence, and disobeying a direct order when Plaintiff allegedly left his seat in the chow hall, refused Bastien's order to return to his seat, and then verbally threatened Bastien.  (Doc. 20-1, pp. 9-10).

[3] Pharrell (whose name is shown on the adjustment committee's final report as "Richard L. Ferrell") chaired the adjustment committee that found Plaintiff guilty of the charges filed by Basten/Bastien, and recommended punishment of 3 months in segregation and revocation of 1 month of good conduct credits.  (Doc. 20-1, pp. 14-15).  Pharrell/Ferrell's disciplinary charge of July 6, 2016, alleges that as Plaintiff left

false disciplinary report, allegedly without relevant evidence to substantiate it.  (Doc. 20, p. 27; Doc. 20-1, pp. 16-17).  Brookman revoked 2 more months of Plaintiff's good time based on Pharrell's report, and Plaintiff got 3 more months in segregation.  (Doc. 20, pp. 27, 29).

Roberts subsequently wrote a "6th" false disciplinary report (on January 5, 2017), and Plaintiff received 14 days in segregation.[4]  (Doc. 20, pp. 27, 30; Doc. 20-1, p. 4).  Pharrell did not follow administrative policy because he did not sign the disciplinary report, which instead had Powell's signature.  (Doc. 20, p. 28).  Butler approved all the disciplinary actions and disobeyed administrative policy regarding final summary reports.  (Doc. 20, p. 30).

Plaintiff raises two First Amendment retaliation claims.  He asserts that the disciplinary reports were issued against him in retaliation for his 2015 FBI complaint.  (Doc. 20, p. 31).  He also asserts that the cell placement with the "Chicago Black Gangster Disciple, and an African American Christian inmate" was also done in retaliation for his FBI complaint.  (Doc. 20, p. 32).

His second retaliation claim is that "in response to [Plaintiff's] exercise of protected religious worship to peaceably assemble," Defendants deprived him of that right, by issuing false disciplinary reports, "because of [Plaintiff's] complaint about human rights violation and civil rights violation . . . and his institutional offender grievances."  (Doc. 20, pp. 33-34).  He further alleges that his religious practice was a motivating factor for Defendants in housing him with the aggressive cellmate.  (Doc. 20, p. 35).

Plaintiff asserts several Eighth Amendment claims, including the failure to protect him from the cellmate who attacked him.  (Doc. 20, pp. 35-37).  He alleges Defendants knew that Pro Black Hebrew Israelite inmates with a severe mental disability would be at risk if placed in a

---

the disciplinary hearing, he verbally threatened to harm Pharrell/Ferrell.  (Doc. 20-1, p. 16).  The hearing on that ticket was chaired by Brookman.  *Id.*

[4] This disciplinary charge alleged that Plaintiff refused to obey an order to pack up his belongings for a move to a new cell.  (Doc. 20-1, p. 4).

segregation cell with general population cellmates who have a maximum security classification. Therefore, Defendants were deliberately indifferent to the risk of harm to Plaintiff from being housed in segregation with Adams, and they failed to properly screen and assign Plaintiff to a segregation cell where he would not face that risk.

Plaintiff also claims that Brookman and Pharrell subjected him to cruel and unusual punishment when they failed to obey administrative policy procedures for his disciplinary hearings, and punished him with solitary/segregation confinement. (Doc. 20, p. 38-39).

Next, Plaintiff asserts that his segregation cell conditions during the dates of November 4, 2015-February 4, 2016; July 6-November 10, 2016; and January 5-19, 2017 violated the Eighth Amendment. He presents a lengthy list of alleged violations, including the initial placement with cellmate Adams; the failure to then place Plaintiff in a single cell or with another inmate who shares his religious affiliation; lack of sufficient bedding, clothing, soap, pens, a mirror, and cleaning supplies; deprivation of access to the law library or religious services; denial of religious diet and condiments; a 14-day delay in obtaining his personal property; deprivation of commissary and other items not permitted in segregation; having to sleep on a dirty mattress and pillow; being housed in a too-small cell; exposure to temperature extremes in winter without sufficient warm clothing and in summer without a fan; deprivation of mental health treatment for 3 months; exposure to other inmates verbally abusing each other; and many other complaints. (Doc. 20, pp. 40-59).

He also claims that Defendants were deliberately indifferent to the risk he would be tortured. (Doc. 20, pp. 59-60); that they conspired to retaliate against him (Doc. 20, pp. 60-61, 63-64); and that they intentionally inflicted emotional distress upon him. (Doc. 20, pp. 61-62).

Finally, Plaintiff asserts Fourteenth Amendment claims that he was deprived of his

personal property and of his liberty without due process, and that he was denied equal protection of the laws "like Pro White Hebrew Israelite Severely Mentally disabled Petitioners-inmates." (Doc. 20, pp. 65-70).

Plaintiff seeks monetary damages and an order requiring Defendants to obey their administrative policies and procedures. (Doc. 20, pp. 71, 75).

### Discussion

Based on the allegations of the Fourth Amended Complaint, the Court finds it appropriate to divide the *pro se* action into the following Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Fourth Amended Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Cowell, Horn, Jones, Pharrell, Butler, Hoffman, Bebout, Oakley, and Roberts, for filing false disciplinary reports against Plaintiff in November 2015 and January 2017, and punishing him with segregation;

**Count 2:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Basten, Powell, Mich, Pharrell, Brookman, and Butler, for filing false disciplinary reports against Plaintiff in June and July 2016, and punishing him with segregation and the revocation of sentence credits;

**Count 3:** Eighth Amendment failure to protect claim against Butler, Bebout, Baldwin, and the Board Members of the IDOC, for failing to implement or follow screening procedures pursuant to the Illinois Administrative code before placing Plaintiff in a double cell with an aggressive cellmate in November 2015;

**Count 4:** First Amendment retaliation claim against Cowell, Horn, Jones, Pharrell, Butler, Hoffman, Bebout, Oakley, Basten, Powell, Mich, Brookman, and Roberts, for filing false disciplinary reports against Plaintiff and housing him with a dangerous cellmate, because he submitted a complaint to the FBI and/or because he filed grievances, and/or because of his religious practice;

**Count 5:** Eighth Amendment claims against all Defendants for housing Plaintiff

under unconstitutional conditions of confinement while he was in segregation, and for subjecting him to "torture;"

**Count 6:** Fourteenth Amendment claim for deprivation of personal property without due process;

**Count 7:** Fourteenth Amendment claim for denial of Plaintiff's right to equal protection;

**Count 8:** Conspiracy claims under § 1983 and Illinois state law, against Defendants for conspiring to retaliate against Plaintiff and to harm him;

**Count 9:** State law claim for intentional infliction of emotional distress.

After carefully considering the allegations in the Fourth Amended Complaint and the attached exhibits, the Court concludes that each of the claims is subject to dismissal pursuant to § 1915A.

### Count 1 – False Disciplinary Reports – November 2015 and January 2017

The disciplinary actions included in this Count are the 2 charges issued on November 4, 2015, by Cowell and Horn; the November 15, 2015, ticket for fighting issued by Hoffman; and the January 5, 2017, ticket by Roberts. Plaintiff was punished with 1 month of segregation for each of the first 3 offenses, and received 14 days in segregation for the January 2017 charge. He maintains that these charges were false and/or unsupported by evidence. He also claims that some administrative procedures were not followed in handling the disciplinary matters.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 563-572 (1974) (24 hours' advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the

reasons for the discipline imposed).  However, the decision of the disciplinary hearing board must also be supported by "some evidence."  *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff alleges that he was not given 24 hours' notice before the disciplinary hearing on the November 4, 2015 charges and was not offered any assistance to prepare his defense.  He does not allege any procedural irregularities with the November 10, 2015 fighting charge.

Plaintiff provided copies of both original disciplinary tickets from November 4, 2015 which indicates that he received those documents informing him of the charges against him and their factual basis on or near that date.  (Doc. 20-1, pp. 5-7).  He also provided copies of the final reports of the Adjustment Committee, which show that the hearings were took place on November 10, 2015 at 7:41 and 7:43 a.m.  (Doc. 20-1, pp. 11-12).  The Complaint indicates that Plaintiff received the tickets on November 4.  But regardless of whether he received his copy of the tickets on November 4, 2015 or anytime thereafter up to early morning on November 9, 2015, he would have received notice of the charges 24 hours before the hearing was held on November 10, in compliance with *Wolff*.

*Wolff* also instructs that if the inmate is illiterate or the issues are complex, a staff member or another inmate should be made available to help in presenting a defense to the disciplinary charges.  *Wolff*, 418 U.S. at 563-572; *see also Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983).  In Plaintiff's case, however, he is clearly literate and able to express himself, and no complex issues were presented by in any of his disciplinary tickets.  Therefore, prison officials did not violate the provisions of *Wolff* by declining to offer Plaintiff assistance before his disciplinary hearings.  Finally, the officers' accounts of the incidents that gave rise to the disciplinary tickets, even if contradicted by Plaintiff's denial of guilt, provided constitutionally

sufficient evidence to support the guilty findings on each of the charges.

Plaintiff's only challenge to the January 5, 2017, ticket issued by Roberts was that the document should have been signed by Pharrell instead of Powell. Even if true, that is merely a technicality, and does not implicate any of the due process considerations outlined in *Wolff*. A failure to comply with prison administrative rules or procedures does not amount to a civil rights violation. *See Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations).

The same is true for Plaintiff's claim (labeled in the Fourth Amended Complaint as the "4th Claim for Relief") that Brookman and Pharrell violated his Eighth Amendment rights when they failed to follow some unidentified "Administrative agency Policy Procedures" in handling the disciplinary hearings. (Doc. 20, pp. 38-39). A violation of an administrative procedure does not give rise to a constitutional claim.

Notably, even if there had been a violation of the due process standards outlined in *Wolff*, Plaintiff would not have a viable constitutional claim. A prisoner cannot maintain a claim for deprivation of a liberty interest without due process unless certain narrow requirements are met. Specifically, the duration and conditions of the disciplinary segregation must have imposed an "atypical and significant hardship" on the inmate when compared to the conditions he would have faced in nondisciplinary segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary, and the claim is subject to dismissal. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when

one considers his 12 year prison sentence"). That is because the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). Only if the disciplinary segregation period was sufficiently long *and* if the conditions of confinement were unusually harsh, may an inmate maintain a civil rights claim for deprivation of a liberty interest without due process.

Plaintiff's first 3 disciplinary actions each resulted in a 1 month segregation term. The January 2017 disciplinary charge resulted in 14 days in segregation. Based on the above-referenced authority, a 1 month period in disciplinary segregation is generally too short to trigger an inquiry into the conditions of confinement – the same is obviously true for a 14-day stay. The fact that Plaintiff was punished with 3 consecutive 1 month stays in segregation does not change the analysis. Each disciplinary procedure was distinct, in compliance with *Wolff*, and resulted in a short-term punishment.

As no constitutional violation is apparent in the handling of Plaintiff's disciplinary tickets, **Count 1** will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 2 – False Disciplinary Reports – June-July 2016

Plaintiff's 2 disciplinary actions from June and July 2016 are listed under a separate Count because in each case, Plaintiff was punished with a loss of good conduct credits in addition to segregation. There is no indication in the Fourth Amended Complaint that either of these disciplinary actions were reversed or nullified. Accordingly, any civil rights claim that Plaintiff might bring based on these disciplinary actions is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the Supreme Court held that a § 1983 action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486-87. For purposes of this analysis, "the ruling in a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)). Claims that "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. *Balisok*, 520 U.S. at 646-68.

This is Plaintiff's situation – he is not seeking to have his sentence credits restored (indeed, he is now out of prison). However, he attacks the integrity of the disciplinary actions, asserting that they were wrongfully brought and/or based on false accusations, and seeks damages based on the officers' charging him with disciplinary infractions and punishing him. *Heck* does not permit Plaintiff to proceed on such a claim unless the disciplinary action is first invalidated. As such, **Count 2** must be dismissed, albeit without prejudice.

### Count 3 – Failure to Protect

This claim is based on Plaintiff's placement in a double segregation cell with inmate Adams on November 9, 2015. Plaintiff asserts that Butler, Bebout, Baldwin, and the IDOC "Board Members," should have implemented screening procedures that were allegedly required by the administrative code, implying that such procedures would have prevented the housing assignment. Although not entirely clear, the Fourth Amended Complaint suggests that Bebout and Butler were the individuals who made the decision to place Plaintiff in the cell with Adams.

13

(Doc. 20, pp. 23-24). He claims that they failed to comply with administrative rules in making that decision. Adams later attacked and injured Plaintiff.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the inmate's safety. *Farmer*, 511 U.S. at 834. Rather, in order for a plaintiff to succeed on a failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889.

A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that the person who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Nothing in Plaintiff's factual narrative indicates that Adams gave any advance warning that he might attack Plaintiff, or that Plaintiff told any Defendant that he was threatened by Adams before the attack occurred. In the absence of a prior warning that a threat existed, a prison official cannot be held liable for failing to prevent an attack by a fellow inmate.

Plaintiff suggests that Butler or Bebout should have understood that he faced a heightened vulnerability to attack because of his religious affiliation and/or mental illness, but he does not explain why these characteristics made him more likely to be abused by his cellmate. Nor does Plaintiff allege that Adams had a history of attacking cellmates or otherwise posed a known threat. Adams' alleged gang membership and his murder conviction alone do not indicate that he was more likely to instigate an attack than the many other inmates in Menard who share those characteristics. An Eighth Amendment claim may be stated where an official knows that an inmate is particularly vulnerable to attack yet places the inmate in harm's way. *See, e.g.*, *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005) (collecting cases) ("deliberate indifference can be predicated upon knowledge of a victim's particular vulnerability . . . or, in the alternative, an assailant's predatory nature); *Weiss v. Cooley*, 230 F.3d 1027, 1030, 1032 (7th Cir. 2000) (claim was stated where prison official allegedly knew of a substantial risk that the plaintiff would be attacked but said, "you have to face the music sometime"); *Walsh v. Mellas*, 837 F.2d 789, 798-99 (7th Cir. 1988) (Eighth Amendment claim was stated where prison officials placed inmate in cell with gang leader despite knowing of gang's threats against inmate). The facts presented by Plaintiff, however, do not support a deliberate indifference claim. Accordingly, **Count 3** shall be dismissed for failure to state a claim upon which relief may be granted.

### Count 4 - Retaliation

Plaintiff alleges that Defendants issued false disciplinary reports against him, placed him in segregation, and housed him with a gang member and with an "African American Christian inmate" (the pleading does not make clear whether this is the same person) all because of the complaint Plaintiff sent to the FBI about prison conditions at Menard and Pontiac during his

2003-2012 imprisonment. (Doc. 20, pp. 31-32). He raises a second, overlapping retaliation claim, alleging Defendants were motivated to write the false reports, house him with the aggressive and Christian cellmate(s), and curtail his ability to engage in worship because Plaintiff filed the FBI complaint, filed unspecified prison grievances, and practiced his religion. (Doc. 20, pp. 32-35).

It has long been established that prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The relevant inquiry for a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff's recitation of the facts does not support a plausible retaliation claim based on the complaint he sent to the FBI. Plaintiff does not allege that any of the Defendants were aware of this complaint, nor does he allege any facts from which such knowledge can reasonably be inferred. He does not suggest that he mentioned any of them in the document he sent to the FBI. Plaintiff describes the FBI complaint as containing allegations of conspiracy to violate his civil rights, being housed in solitary confinement, and suffering an assault while he was in prison in 2003-2012 (Doc. 20, p. 17) – events that took place several years before Plaintiff's 2015

incarceration at Menard. Because Plaintiff fails to draw any connection between the FBI complaint and the actions of any of the Defendants in this case, it is not plausible to conclude that his FBI complaint provided motivation for any Defendant to retaliate against him.

Plaintiff also fails to state a colorable retaliation claim based on his filing of prison grievances. In order to state a claim, a plaintiff must identify the protected conduct that allegedly caused the retaliation. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Fourth Amended Complaint fails on this basis. While filing a grievance is a protected First Amendment activity, Plaintiff doesn't point to any specific grievance, or present a chronology of events that would suggest a grievance triggered any retaliatory action. The vague assertion of retaliation based on Plaintiff's unspecified grievance activity is simply insufficient to state a plausible claim. The same is true for his assertion that his religious practice or affiliation prompted Defendants to retaliate against him. Plaintiff does not set forth any factual allegations or describe any incidents to raise a reasonable inference that the alleged retaliation was related to his religion. Therefore, **Count 4** will also be dismissed pursuant to § 1915A.

## Count 5 – Unconstitutional Cell Conditions

Many of Plaintiff's complaints regarding the conditions of his confinement in segregation are trivial and fail to raise a constitutional concern. Others, such as the allegations of having to sleep on a dirty mattress and bedding, insufficient winter clothing, lack of cleaning and hygiene supplies, and denial of mental health treatment, could support an Eighth Amendment claim. The claim that he was subjected to "torture" would also raise a constitutional issue, but Plaintiff does not include any facts to explain what actions or incidents amounted to torture. In any event, there are two components to an Eighth Amendment claim, and the operative complaint fails to satisfy the second.

The first (objective) element of a claim for unconstitutional conditions of confinement requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). As the Court previously noted, some of the cell conditions Plaintiff describes may arguably amount to an objectively serious lack of sanitation or risk to his health.

The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The subjective element is where the Fourth Amended Complaint falls short. Plaintiff never describes any encounter with a Defendant or any other prison official in which he alerted them to the bad conditions in his cell, or asked for help in correcting the problems. Nor does he claim that any official, after being informed of the conditions, failed to take action to mitigate the risk to Plaintiff. While Plaintiff repeatedly blames most of the Defendants for improperly punishing him and causing him to be housed in segregation, nothing in the pleading indicates that the Defendants who brought disciplinary charges against Plaintiff or found him guilty had any responsibility for maintaining the cleanliness or other conditions of Plaintiff's segregation

cell.

In the Order dismissing Plaintiff's Third Amended Complaint, the Court pointed out that Plaintiff did not connect any Defendant to the alleged problems with his cell, and instructed him that he must explain what each Defendant did or failed to do in order to state a claim that the Defendant violated his rights. (Doc. 16, pp. 6, 10, 13). Nevertheless, Plaintiff has once again failed to identify any Defendant who knowingly disregarded the risks he faced from being housed in the segregation cell(s) under the conditions he describes. Thus, **Count 5** does not state a deliberate indifference claim upon which relief may be granted and shall be dismissed.

### Count 6 – Deprivation of Property

Count 6 includes Plaintiff's claim that upon being moved to a segregation cell on one occasion, he was denied access to his personal property for 14 days, and that other property was confiscated or destroyed because he was not allowed to have it in segregation. The only constitutional right that might be implicated by these allegations is Plaintiff's Fourteenth Amendment right to be free from deprivations of his property without due process of law.

To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois does in fact provide an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Regardless of whether Plaintiff were to file an action in the Court of Claims, the fact that the avenue is available means that he cannot

maintain a constitutional claim in federal court for the deprivation of his property.  **Count 6** will therefore be dismissed.

### Count 7 – Denial of Equal Protection

In order to state an equal protection claim, a plaintiff must demonstrate that "state officials had purposefully and intentionally discriminated against him."  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose . . . implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango*, 681 F.2d at 1104).

Plaintiff claims he was denied "the equal protection of the laws like Pro White Hebrew Israelite Severely Mentally Disabled Petitioners-inmates."  (Doc. 20, p. 68).  He doesn't explain, however, how he as a "Pro Black Hebrew Israelite who is severely mentally disabled" was treated differently from "Pro White Hebrew Israelite severely mentally disabled" inmates (if any such group exists) or from any other identifiable group.  The Fourth Amended Complaint therefore fails to state a cognizable claim for the denial of equal protection, and **Count 7** shall also be dismissed.

### Count 8 – Conspiracy

Civil conspiracy claims are cognizable under § 1983.  *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002).  However, conspiracy does not provide an independent basis of liability.  *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*,

211 F.3d 416, 423 (7th Cir. 2000).  In other words, "[t]here is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."  *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

Plaintiff has failed to state a claim upon which relief may be granted for retaliation or any of the other alleged constitutional violations.  Because the underlying claims fail, he cannot sustain his claim that Defendants conspired to retaliate against him or to otherwise violate his rights.  **Count 8** is also subject to dismissal for failure to state a claim upon which relief may be granted.

### Count 9 – Intentional Infliction of Emotional Distress

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiff's claim that the Defendants' actions constituted intentional infliction of emotional distress in violation of Illinois law is based on the same facts that he relied on to bring his federal claims.  The Court would thus have supplemental jurisdiction to consider this state claim.  However, as addressed above, Plaintiff's federal claims will be dismissed pursuant to § 1915A, and "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).  The Court sees no reason to depart from this practice in this case. **Count 9** will therefore be dismissed without prejudice.

## Dismissal of Additional Defendants

In his list of Defendants, Plaintiff includes individuals who are not mentioned in the body of the Fourth Amended Complaint:  Bradley, Rauner, and Hughs.  Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the Complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  When as here, a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  Moreover, in the case of "Rauner," the Illinois Governor, liability cannot be imposed on him merely because he holds a position of authority over other Defendants.  *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).  Therefore, these Defendants will also be dismissed.

Plaintiff does include allegations against 2 other Defendants, but fails to state a claim against them.  Specifically, he alleges that Phoenix (counselor) responded to his complaint about his initial housing assignment at Menard and recommended him for a transfer to a lower-security housing area.  These facts alone do not suggest any constitutional violation.

Finally, Plaintiff includes Adams, the inmate who allegedly attacked him, as a Defendant. However, because Adams is not a state employee or a person clothed with state authority, he cannot be sued in a civil rights action.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003).

For these reasons, Defendants Bradley, Rauner, Hughs, and Phoenix will be dismissed from this action without prejudice.  Adams shall be dismissed with prejudice.

<u>**Disposition**</u>

**COUNTS 2, 4, 5, 7, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 1, 3, 6, AND 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **BROOKMAN, COWELL, BUTLER, PHARRELL, BRADLEY, PHOENIX, HOFFMAN, RAUNER, OAKLEY, HUGHS, JONES, ROBERTS, POWELL, MICH, HORN, BEBOUT** and **BASTEN** are **DISMISSED** from this action without prejudice. Defendants **BALDWIN, BOARD MEMBERS** of **ILLINOIS DEPARTMENT** of **CORRECTIONS,** and **ADAMS,** are **DISMISSED** from this action with prejudice.

Because each of Plaintiff's claims has been dismissed for failure to state a constitutional claim upon which relief may be granted, and because Plaintiff was warned that the Fourth Amended Complaint would be his final opportunity to amend his pleading in order to state one or more viable claims (Doc. 16), this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.  All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as his third "strike" under the provisions of 28 U.S.C. § 1915(g).  As he was advised in the order dismissing the Third Amended Complaint, Plaintiff has now accumulated three strikes[5] for having cases dismissed as frivolous, malicious, or for failure to state a claim.  (Doc. 16, p. 14).  Accordingly, if Plaintiff seeks to file any future civil action or appeal a judgment *while he is a prisoner*, he will no longer be eligible to pay a filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  If Plaintiff cannot make the necessary showing of imminent physical danger,

---

[5] Plaintiff's first strike was assessed in *Hamilton v. Wright, et al.*, Case No. 16-cv-1346-NJR (S.D. Ill., dismissed March 3, 2017, for failure to state a claim); his second strike was for *Hamilton v. Horn, et al.*, Case No. 16-cv-1050-NJR (S.D. Ill., dismissed June 2, 2017, for failure to state a claim).

he shall be required to pre-pay the full filing fee for any future lawsuit or appeal he may file while incarcerated, or face dismissal of the action.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, because Plaintiff has "struck out" and has not shown that he is in imminent danger of serious physical injury, this Court will not grant him permission to proceed *in forma pauperis* on appeal, if he is incarcerated at the time he submits his notice of appeal.  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: February 22, 2018**

s/ STACI M. YANDLE
United States District Judge